1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**
9        **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   UNITED STATES OF AMERICA,            Case No. 22-cr-02701-BAS
12                        Plaintiff,      **ORDER:**
13        v.
14   DONALD DANKS; JONATHAN               **(1)  GRANTING REQUESTS FOR**
     DESTLER; ROBERT LAZERUS,                  **JOINDER IN MOTIONS TO**
15                                             **DISMISS INDICTMENT**
                          Defendants.          **(ECF Nos. 80, 124, 125);**
16
17                                        **(2)  DENYING DEFENDANT**
18                                             **DONALD DANKS'S MOTION**
                                               **TO DISMISS COUNTS ONE**
19                                             **AND TWO OF THE**
                                               **INDICTMENT (ECF No. 78);**
20                                             **AND**
21
22                                        **(3)  DENYING DEFENDANT**
                                               **JONATHAN DESTLER'S**
23                                             **MOTION TO DISMISS THE**
                                               **INDICTMENT (ECF No. 90)**
24

25        Presently before the Court are two Motions to Dismiss the Indictment.  First,
26   Defendant Donald Danks moves to dismiss Counts One and Two of the Indictment.  (ECF
27   No. 78.)  The Government opposes.  (ECF No. 87.)  Defendant Robert Lazerus also moves
28   for joinder in Danks's Motion to Dismiss.  (ECF No. 80.)

22cr2701

Second, Defendant Jonathan Destler moves to dismiss all counts of the Indictment against him.  (ECF No. 90.)  The Government again opposes (ECF No. 100), and the Court permitted Destler to file a Reply (ECF No. 118).  Danks and Lazerus also move for joinder in Destler's Motion to Dismiss.  (ECF Nos. 124, 125.)

The Court heard argument on the Motions.  (ECF No. 127.)  The Court **GRANTS** the Motions for Joinder.  In addition, for the following reasons, the Court **DENIES** Danks's and Destler's Motions to Dismiss the Indictment.

## I.   BACKGROUND

Charges.   The grand jury returned a three-count indictment against Defendants David Stephens, Donald Danks, Jonathan Destler, and Robert Lazerus.  (Indictment, ECF No. 9.)  Count One charges Defendants with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371.  (*Id.* ¶¶ 16–31.)  Count Two charges Defendants with securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.l0b–5.  (*Id.* ¶¶ 32–34.)  Finally, Count Three charges Danks with money laundering involving the proceeds from the alleged securities fraud.  (*Id.* ¶ 35.)

At this stage, the Court "must accept the truth of the allegations in the indictment." *United States v. Kelly*, 874 F.3d 1037, 1047 (9th Cir. 2017).  According to the Indictment, the charged crimes arose out of a "pump-and-dump scheme" surrounding a publicly-traded company known as Loop Industries, Inc.[1]  (Indictment ¶¶ 1, 18.)  Defendants also concealed "their status as a control group of unrestricted Loop stock" while selling shares to investors.  (*Id.* ¶ 19.)

---

[1]  A "pump-and-dump scheme" is defined as a plan that "typically" involves:

the artificial inflation of the stock price and trading volume of a publicly-traded company (the "pump") so that individuals who control a substantial portion of the company's stock can sell shares of that stock at artificially high prices to other investors (the "dump"). Generally, such schemes effected the artificial inflation in a stock's share price by, among other things, issuing news releases and/or promotional materials regarding the company and its stock - often containing false, misleading, or exaggerated information - and/or by engaging in manipulative trading of the stock to affect its price and generate the appearance of demand for the shares.

(Indictment ¶ 11.)

22cr2701

Each Defendant played a role in the scheme.  Stephens "participated in the control of Loop" and "in the management and control of certain offshore nominee entities that held tradeable shares of Loop stock."  (Indictment ¶ 1.)  Danks was a director of Loop and a "direct and indirect controlling shareholder" who "controlled and marketed Loop stock." (*Id.* ¶ 2.)  Destler likewise was a "direct and indirect controlling shareholder" who "controlled and marketed Loop stock."  (*Id.* ¶ 4.)  The final player, Lazerus, "solicited investments in Loop stock from, among others," an undercover officer who posed as a potential Loop investor.  (*Id.* ¶¶ 4, 6.)

Acquiring the Shell Company.  In broad brushes, Defendants' scheme played out as follows.  Stephens first acquired control of a publicly-traded shell company whose shares were held in eleven offshore nominee entities.  (Indictment ¶ 31(a).)  Stephens, Danks, and Destler then arranged for Loop's predecessor to complete a reverse merger with the shell company, forming Loop.  (*Id.* ¶¶ 22, 31(a)–(b).)  At the time of the merger, however, Stephens covertly controlled virtually all of the tradeable shares of Loop through the offshore entities—entities that appeared to be independent of each other and of Stephens. (*Id.* ¶ 31(b).)  He then transferred significant blocks of Loop shares to Danks and Destler "for little to no consideration."  (*Id.* ¶ 25.)

Misleading the Brokerage Firms.  The next step was for Danks and Destler to sell shares of Loop "without disclosing their controlling interests in the stock."  (Indictment ¶ 26.)  To do so, Danks and Destler set up trading accounts with various brokerage firms and misled the firms to avoid trading restrictions.  (*Id.* ¶ 31(c).)  Among other things, Destler underreported the amount of shares owned by an entity controlled by Destler and Danks, and Danks "falsely represented . . . he was not a director of a publicly-held company, when in fact he was a member of the Loop board of directors."  (*Id.* ¶ 31(c)(i), (n).)  They sold shares through the open market.  (*Id.* ¶ 31(f).)  Danks and Destler "also distributed the proceeds of these sales between themselves, Stephens, and Lazerus."  (*Id.* ¶ 26.)

22cr2701

1       <u>Manipulating the Price of Loop</u>.  Finally, as part of their scheme to profit from selling

2   unrestricted shares of Loop, Defendants worked to generate "artificial trading volume" and

3   artificially raise and maintain the price of Loop.  (Indictment ¶ 28.)  Defendants allegedly

4   did so by promoting Loop to "an elderly and vulnerable investor."  (*Id.*)  Danks worked

5   with Lazerus to have the elderly investor purchase significant numbers of shares "without

6   ever disclosing the control interests that Stephens, Danks, and Destler had in the stock."

7   (*Id.* ¶ 33(l).)

8       Defendants also disseminated "material non-public information about Loop to

9   specific investors, to encourage purchases of free-trading shares of Loop and discourage

10   investors from selling off shares of Loop."  (Indictment ¶¶ 28–29.)  In one instance, Lazerus

11   advised an undercover officer to buy Loop because the company was going to announce a

12   new equity deal.  (*Id.* ¶ 31(s).)  Lazerus told the undercover officer that he obtained this

13   information from Destler, "who was in regular communication with the CEO of Loop."

14   (*Id.*)

15       Danks and Destler now move to dismiss the conspiracy and securities fraud charges

16   in the Indictment, arguing the Indictment fails to fails to state a cognizable offense.

17   ## II.   LEGAL STANDARD

18       A defendant may challenge the indictment before trial for failure to state an offense.

19   Fed. R. Crim. P. 12(b)(v).  An indictment must set forth each element of the offense.

20   *United States v. Davis*, 33 F.4th 1236, 1240 (9th Cir. 2022).  "An indictment is sufficient

21   if it contains the elements of the charged crime in adequate detail to inform the defendant

22   of the charge."  *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016) (quoting

23   *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982)); *accord United States v.*

24   *Huping Zhou*, 678 F.3d 1110, 1113 (9th Cir. 2012); *see also* U.S. Const. amend. VI

25   (providing the accused with the right "to be informed of the nature and cause of the

26   accusation").

27       "The test for sufficiency of the indictment is 'not whether it could have been framed

28   in a more satisfactory manner, but whether it conforms to minimal constitutional

standards.'" *United States v. Awad*, 551 F.3d 930, 937 (9th Cir. 2009) (quoting *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000)).   In making this determination, the court is "bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment." *Kelly*, 874 F.3d at 1047.  "The court must look at the indictment as a whole, include facts which are necessarily implied, and construe it according to common sense." *Kaplan*, 836 F.3d at 1216.  The indictment must be dismissed, however, if it is "missing an essential element." *United States v. Qazi*, 975 F.3d 989, 991 (9th Cir. 2020).

## III.  ANALYSIS

Both Motions to Dismiss challenge whether the Indictment sufficiently states offenses for conspiracy and securities fraud.  "To prove a conspiracy under 18 U.S.C. § 371, the government must establish: (1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *Kaplan*, 836 F.3d at 1212.

As for securities fraud, Section 10(b) of the Securities Exchange Act provides it is "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b); *see also id.* § 78ff (criminalizing willful violations).  "One such rule so prescribed is Rule 10b–5." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972).  This rule states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

22cr2701

1
2

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

3

in connection with the purchase or sale of any security.

4

17 C.F.R. § 240.10b–5.

5

"Rule 10b–5 has been described as a 'catchall' antifraud provision" for two reasons.

6

*S.E.C. v. Clark*, 915 F.2d 439, 448 (9th Cir. 1990). "First, the language of the rule explicitly

7

encompasses *any* purchase or sale by *any* person of *any* security." *Id.* at 448. "Second,

8

Rule 10b–5 is a catchall because its terms are notoriously vague. Words and phrases like

9

'fraud,' 'deceit,' and 'device, scheme or artifice' provide a broad linguistic frame within

10

which a large number of practices may fit." *Id.*

11

### A. Scheme Liability

12

Danks and Destler's primary argument is the Indictment fails to allege securities

13

fraud. In response, the Government contends the Indictment details how Defendants

14

"participated in a scheme under Rule 10b–5(a) and (c) to mislead investors, brokers, and

15

regulators and shared in the proceeds that flowed from those lies." (Opp'n to Danks's Mot.

16

15:4–6; *see also* Opp'n to Destler's Mot. 5:5–15.) As seen above, "[s]ubsections (a) and

17

(c) of Rule 10b–5 prohibit fraudulent devices, schemes, acts, or practices." *United States*

18

*v. Laurienti*, 611 F.3d 530, 539 (9th Cir. 2010); *see also Blackie v. Barrack*, 524 F.2d 891,

19

903 n.19 (9th Cir. 1975) ("Rule 10b–5 liability is not restricted solely to isolated

20

misrepresentations or omissions; it may also be predicated on a "practice, or course of

21

business which operates . . . as a fraud . . . .'").

22

The Supreme Court interpreted these portions of Rule 10b–5 in *Lorenzo v.*

23

*Securities and Exchange Commission*, 139 S. Ct. 1094, 1099 (2019). There, as to Rule

24

10b–5(a), the Court explained: "A 'device,' we have observed, is simply '[t]hat which is

25

devised, or formed by design'; a 'scheme' is a 'project,' 'plan[,] or program of something

26

to be done'; and an 'artifice' is 'an artful stratagem or trick.'" *Id.* at 1101. The Court

27

reasoned the terms "'act' and 'practice' in subsection (c) are similarly expansive." *Id.*

28

Hence, these two parts of Rule 10b–5 "capture a wide range of content." *Id.*

22cr2701

Further, the Supreme Court rejected the notion that the three subsections in Rule 10b–5 "should be read as governing different, mutually exclusive, spheres of conduct." *Lorenzo*, 139 S. Ct. at 1102. "It should go without saying that at least some conduct amounts to 'employ[ing]' a 'device, scheme, or artifice to defraud' under subsection (a) as well as 'engag[ing] in a[n] act . . . which operates . . . as a fraud' under subsection (c)." *Id.* (alterations in original). Examples of conduct falling under these subsections include:

- The defendant sent emails to investors with statements supplied by his boss that the defendant knew were misleading or false. These statements described an investment in a company that had minimal assets "as having '3 layers of protection,' including $10 million in 'confirmed assets.'" *Lorenzo*, 139 S. Ct. 1099.

- The senior employees of a securities broker-dealer engaged in a pump and dump scheme. The broker-dealer received "large blocks of free, or deeply discounted, stock" from publicly-traded companies and then "drove up the price of these thinly traded stocks by," among other things, "pressuring unsuspecting clients into purchasing shares." Meanwhile, those who stood to profit from the scheme "sold their shares at artificially inflated prices." *Laurienti*, 611 F.3d at 534–35.

- The defendant operated a program that appeared "to be a pyramid scheme" for its product distributors and their supervisors. The program rewarded recruiting new members into the program more than it rewarded selling the defendant's products and offered royalties "on up to six levels of downline supervisors." *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 780, 785 (9th Cir. 1996).

### 1. Fraudulent Scheme or Acts

Returning to the Indictment, the Court finds it states the elements of securities fraud "in adequate detail to inform [Defendants] of the charge." *See Kaplan*, 836 F.3d at 1216. Starting with the first element, the twenty-page Indictment alleges Danks and Destler "participated in a pump-and-dump scheme surrounding Loop and its stock" and "a scheme to conceal their status as a control group of unrestricted Loop stock, brokering sales of Loop stock to investors." (Indictment ¶¶ 18, 19.) The Indictment also provides ample

22cr2701

details about the alleged scheme:  Danks and Destler helped arrange the reverse merger involving offshore shell entities to create Loop.  (*Id.* ¶¶ 22, 31(a).)  They received significant blocks of Loop stock "for little to no consideration." (*Id.* ¶ 25.)  Destler opened brokerage accounts through false representations and omissions and deposited Loop stock that he received for less than one cent per share.  (*Id.* ¶ 31(c).)  Danks falsely represented to a broker-dealer that he was not a director of a publicly-held company despite being a member of Loop's board of directors.  (*Id.* ¶ 31(n).)  They sold shares "without disclosing their controlling interests in the stock" and "distributed the proceeds of these sales" among the four Defendants.  (*Id.* ¶ 26.)

Further, Danks and Destler promoted Loop to "an elderly and vulnerable investor, for the purpose of generating artificial trading volume and artificially maintaining the price of Loop stock," without disclosing their control over Loop and its stock.  (Indictment ¶¶ 20, 28; *see also id.* ¶ 31(h)–(m), (q).)  Finally, Danks and Destler "artificially supported Loop stock by disseminating material non-public information about Loop to specific investors, to encourage purchases of free-trading shares of Loop and discourage investors from selling off shares of Loop."  (*Id.* ¶ 29; *see also id.* ¶ 31(r)–(t).)

Whether the Government can prove these allegations, of course, is an entirely different matter.  Defendants maintain that their conduct was above-board and there "is nothing illegal about being a member of a group of investors who direct or influence the management or policies of a company, . . . nor is it illegal to promote a company's story and celebrate its success or commiserate in its failure, as the case may be."  (*See* Destler's Mot. 7:16–20.)  Even so, the Indictment alleges much more was afoot involving Defendants.  It alleges a plan that involved Defendants using offshore shell entities, orchestrating a reverse merger, transferring large blocks of stock for little to no consideration, lying to brokerage firms, concealing controlling interests in the stock, pressuring an elderly and vulnerable investor to buy significant blocks of shares without disclosing their controlling interest, and disclosing insider information to try to prop up the value of the stock.  The Court reiterates that it is limited to considering the four corners of

the indictment and must "construe it according to common sense."[2]  *See Kaplan*, 836 F.3d at 1216.  Hence, when viewed under this framework, the indictment sufficiently alleges Danks and Destler willfully used a device or scheme to defraud or engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person.  *See* 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b–5(a), (c).

To dispel doubt, the Court addresses several of Defendants' other arguments.  Both Danks and Destler contend the Indictment is deficient because the alleged scheme does not mirror the pump-and-dump schemes found in the caselaw.  (*See* Danks's Mot. 2:26–3:15 (arguing the Indictment fails to "identify any false press releases" or "untrue promotional materials regarding the company and its stock"); Destler's Mot. 5:7–6:20 (arguing the Indictment fails to allege Destler spread false or misleading information or engaged in manipulative trading).)  The Court agrees with the Government, however, that the contours of such schemes are not carved in marble.  *See Lorenzo*, 139 S. Ct. at 1103 (noting the securities laws aim to "to achieve a high standard of business ethics in the securities industry" and "were designed 'to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits'" (quoting *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946))).  It is enough here that the Indictment adequately alleges securities fraud under Rule 10b–5.  *Cf. United States v. Gilak*, 311 F. App'x 957, 999 (9th Cir. 2009) ("Although the indictment used the term 'pump and dump' to describe the alleged scheme, the offense charged in the Indictment is securities fraud, and the existence of a pump and dump scheme is not a necessary element of a securities fraud violation").

---

[2]  The Court denies Destler's request for the Court to take judicial notice of an SEC filing. (Destler's Mot. 8 n.7.)  Although the Court could take judicial notice of the content of the filing, it would be inappropriate to take judicial notice of the assertion Destler points to in this context.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

Further, Destler challenges the Indictment's description of him as an affiliate of Loop during at least part of the scheme. (Destler's Mot. 15:16–16:6.) This challenge is unpersuasive. The Government alleges Destler was closely associated with Danks, a director of Loop, and Stephens, "who participated in the control of Loop." (Indictment ¶ 1; *see also id.* ¶¶ 2, 3, 22, 25, 31.) Defendants also allegedly held "controlling interests in the stock" that they sought to conceal as part of the scheme. (*E.g.*, *id.* ¶¶ 24–25.) These allegations provide sufficient notice to Destler, and he does not show the Indictment is "missing an essential element."[3] *See Qazi*, 975 F.3d at 991.

In short, the Court finds the Indictment sufficiently alleges a fraudulent scheme or act under Rule 10b–5 to support the charge of securities fraud.

## 2. Remaining Elements

The Court also finds the Indictment sufficiently alleges the remaining elements of securities fraud. First, the Indictment alleges Danks's and Destler's actions were undertaken "in connection with the purchase or sale of any security"—sales of Loop stock. (*E.g.*, Indictment ¶¶ 26; 31(f), 34.) *See* 17 C.F.R. § 240.10b–5; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (noting the Supreme Court "has espoused a broad interpretation" of this requirement, as "it is enough that the fraud alleged 'coincide' with a securities transaction"). Second, the Indictment alleges Danks and Destler used an instrumentality of interstate commerce. (Indictment ¶ 33.) *See* 15 U.S.C. § 78j (requiring the use of "any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange"); 17 C.F.R. § 240.10b–5 (same). Three, to complete the offense, the Indictment alleges Danks and Destler acted knowingly. (Indictment ¶ 17; *see also, e.g.*, *id.* ¶¶ 28, 29 (alleging Defendants engaged in

---

[3] Finally, Destler briefly invokes the statute of limitations because his alleged misrepresentation to a broker-dealer occurred in 2015, while other parts of the alleged scheme occurred during the limitations period. (*See* Destler's Mot. 17:6–13.) This argument, though, is dependent on Destler's position that the "Indictment fails to sufficiently allege any crime allegedly committed by Mr. Destler." (*Id.*) Because the Court is unpersuaded by Destler's challenge to the Government's allegations, the statute of limitations point is similarly unconvincing.

intentional conduct to generate artificial trading volume and artificially support the price of Loop stock).)  Consequently, the remaining elements for securities fraud are sufficiently alleged.

* * *

Overall, the Court finds the Indictment "conforms to minimal constitutional standards."  *See Awad*, 551 F.3d at 937.  "[I]t contains the elements of the charged crime in adequate detail to inform" Danks and Destler of the charge.  *See Kaplan*, 836 F.3d at 1216; *see also United States v. Parigian*, 824 F.3d 5, 14–15 (1st Cir. 2016) ("The relevant point is that the indictment 'fairly informed' [the defendant] of the nature of the charges so that he could then undertake [a] defense, whether difficult or not.").  The Court therefore denies Danks's and Destler's Motions to Dismiss the securities fraud charge.

### B.   Conspiracy

Finally, the Court briefly touches upon the conspiracy charge.  The Indictment alleges Danks and Destler agreed with others to engage in securities fraud.  (Indictment ¶ 17.)  It identifies over a dozen overt acts taken in furtherance of the alleged conspiracy (*id.* ¶ 31(a)–(t)), and the Indictment alleges Danks and Destler had the requisite intent to commit securities fraud (*id.* ¶ 17).  Danks and Destler argue this charge should be dismissed, but their arguments hinge on the position that the Government alleges securities-related conduct that "is not actually an offense."  (Destler's Mot. 19:8–17; *see also* Danks's Mot. 15:3–6.)  Because the Court is unconvinced by their challenge to the Government's allegations, Defendants do not show the conspiracy charge is "missing an essential element."  *See Qazi*, 975 F.3d at 991; *see also Kaplan*, 836 F.3d at 1212 (listing conspiracy elements).  Thus, the Court denies the Motions to Dismiss the conspiracy charge.

## IV.   CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant Lazerus's Motion for Joinder in Danks's Motion to Dismiss (ECF No. 80).  The Court likewise **GRANTS** Defendants Danks's and Lazerus's Motions for Joinder in Destler's Motion to Dismiss (ECF Nos. 124, 125).

22cr2701

In addition, the Court **DENIES** Defendant Danks's Motion to dismiss Counts One and Two of the Indictment (ECF No. 78).  Finally, the Court **DENIES** Defendant Destler's Motion to Dismiss All Counts of the Indictment (ECF No. 90).

   **IT IS SO ORDERED.**


**DATED: December 14, 2023**

Hon. Cynthia Bashant
United States District Judge

22cr2701